**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

**No. 96-20962**
_____


**ROBERT L BELCHER,**

                                    **Petitioner - Appellant,**


                    **VERSUS**


        **GARY L JOHNSON, DIRECTOR,**
   **TEXAS DEPARTMENT OF CRIMINAL JUSTICE,**
        **INSTITUTIONAL DIVISION,**

                                    **Respondent - Appellee.**



_____

**Appeal from the United States District Court**
**For the Southern District of Texas**

**(H-96-CV-1373)**
_____
**May 14, 1998**


Before REAVLEY, DeMOSS, and PARKER, Circuit Judges.

PER CURIAM:[*]

    A Texas jury convicted Robert L. Belcher of solicitation to

commit capital murder and sentenced him to life imprisonment.

_____

    [*] Pursuant to Local Rule 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

-1-

Belcher was arrested after he and his son forcibly kidnaped a fourteen-year-old girl, K.S., from her home in Missouri. They took K.S. to a hotel room where they forced her to smoke crack cocaine and pose nude for Polaroid photos and in front of a video camera. Belcher and his son then raped and sodomized K.S. Later, they put her in the trunk of their car and drove her to the Missouri River. They took her out of the trunk and shocked her with a stun gun. K.S. started screaming, so Belcher and son put her back into the trunk. After driving around for several hours, they returned to the river and took K.S. out again. This time, they sprayed a chemical in her face so that she could not see and threw her in the river. The river water washed the chemicals out of K.S.'s eyes, and she attempted to get out of the river. Belcher reached out for her, but once he grabbed K.S. by the hand, he used his other hand to beat K.S.'s head with an metal pipe. As K.S.'s body floated down the river, Belcher's son shot her in the back. Miraculously, K.S. survived, escaped, and reported the incident to authorities.

Belcher was arrested in Texas on outstanding Missouri warrants for kidnaping, rape, aggravated assault, and unlawful flight to avoid prosecution. While awaiting extradition to Missouri, Belcher met Donald Myles, another inmate. Belcher offered Myles $30,000 to murder K.S. and her mother, or to arrange to have them murdered. Myles contacted G.C. Kembla, a Fort Bend County sheriff, and reported the solicitation. Kembla posed as a hit man named "Greywolf" and met with Belcher regarding the proposed murders.

-2-

The conversations between Kembla and Belcher were recorded. Based on these recordings, Texas prosecuted and convicted Belcher for solicitation of capital murder. The conviction was affirmed on appeal, and the Court of Criminal Appeals declined to review the case.

Belcher now seeks relief in federal court under 28 U.S.C. § 2254. He alleges that his constitutional rights were violated because the prosecution impermissibly used a peremptory strike to exclude a juror because of his race and the state failed to produce sufficient evidence to support the conviction.

In the district court, respondent Gary L. Johnson conceded exhaustion of state remedies, denied Belcher's allegations, and moved for summary judgment. The district court granted summary judgment, denying Belcher's petition for habeas relief.

This Court granted Belcher a certificate of appealability (COA), limited to review of his claim challenging the composition of the jury under *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712 (1986). Belcher filed his § 2254 petition before the Antiterrorism and Effective Death Penalty Act (AEDPA) was signed into law, so we review his claim under pre-AEDPA standards. *See Lindh v. Murphy*, 117 S. Ct. 2059 (1997). We construe our Court's previous grant of COA on the *Batson* issue as a grant of a certificate of probable cause, *see, e.g.*, *Green v. Johnson*, 116 F.3d 1115, 1120 (5th Cir. 1997), which, according to pre-AEDPA standards, permits us to

consider all arguments raised in the district court, *see Sherman v. Scott*, 62 F.3d 136, 138-39 (5th Cir. 1995), *cert. denied*, 516 U.S. 1093 (1996).  We now turn to Belcher's claims.

## I.  *Batson* challenge

Belcher contests the exclusion of Juror #2, John Harris. Harris was one of six blacks on the venire panel.  During voir dire, Belcher articulated a *Batson* objection to the prosecution's use of all four of its peremptory challenges to exclude black members from the venire.  The trial court held a *Batson* hearing, at which time the prosecutor gave three reasons for using a peremptory strike on Harris: (1) he is a postal worker; (2) he lives in a trailer; (3) he lives in a violent part of town.

A three-step procedure is utilized for reviewing *Batson* claims:

> (1) a defendant must make a prima facie showing that the prosecutor has exercised his peremptory challenges on the basis of race, (2) the burden then shifts to the prosecutor to articulate a race-neutral reason for excusing the juror in question, and (3) the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.

*United States v. Perkins*, 105 F.3d 976, 978 (5th Cir. 1997) (quoting *United States v. Clemons*, 941 F.2d 321, 324 (5th Cir. 1991)).  In this case, the trial court found that Belcher had made the initial prima facie showing.  At that point, the court held a

**Batson** hearing. The prosecutor articulated three racially-neutral reasons for excluding Harris. It was then the duty of the trial court to weigh the credibility of the prosecutor and the reasons articulated for using the peremptory strike. The trial court found that the prosecutor was credible and overruled Belcher's objection.

Because the prosecutor offered racially-neutral justifications for striking Harris, the only remaining question is whether Belcher carried his burden of proving purposeful discrimination. As noted by the federal district court, the trial court's finding with respect to the propriety of the prosecution's use of peremptory challenges is afforded a presumption of correctness. *See* 28 U.S.C.A. § 2254(d) (West 1994), *amended* 28 U.S.C.A. § 2254 (West Supp. 1998). The record supports the trial court's determination, and we are bound to respect it.

Belcher points out that another venireman was a postal worker yet was not stricken, arguing that this undercuts the prosecution's argument that it struck Harris because he is a postal worker. Belcher also relies on **United States v. Bishop**, 959 F.2d 820 (9th Cir. 1992), for the proposition that a venireman's residence in a poor or violent area is not a racially-neutral reason for exercising a peremptory strike.

These points are not well-taken. As the Supreme Court has made clear, when evaluating a prosecutor's reasons for exercising a peremptory strike at "step 2" of the **Batson** analysis, the

prosecution's sole burden is the articulation of a nondiscriminatory reason for the strike. Being a postal worker is not a characteristic that is peculiar to any race. Living in a trailer is not a characteristic that is peculiar to any race. Living in a violent neighborhood is not a characteristic that is peculiar to any race. *Cf.* **Purkett v. Elem**, 514 U.S. 765, 768, 115 S. Ct. 1769, 1771 (1995) ("The wearing of beards is not a characteristic that is peculiar to any race." (quoting **EEOC v. Greyhound Lines, Inc.**, 635 F.2d 188, 190, n.3 (3d Cir. 1980))). The prosecution plainly satisfied step 2 of the **Batson** analysis. At that point, all that remains is step 3, where "the factual findings of the state courts are presumed to be correct, and may be set aside, absent procedural error, only if they are not 'fairly supported by the record.'" **Id.** (citing 28 U.S.C. § 2254(d)(8), *amended* 28 U.S.C.A. § 2254 (West Supp. 1998); **Marshall v. Lonberger**, 459 U.S. 422, 432, 103 S. Ct. 843, 949 (1983)). As we have noted, we agree with the district court that the trial court's original determination is entitled to that presumption of correctness.

Additionally, **Bishop** is distinguishable from this case because the petitioner in that case alleged and demonstrated that the area that the "poor and violent" area that the stricken venireman lived in was in fact predominately a black neighborhood. *See* **Bishop**, 959 F.2d at 822 & n.2. There is no such showing in this record that

Harris's neighborhood is predominately black, such that a peremptory strike exercised on the basis of his neighborhood might be inferred to be racially-motivated. We decline to assume, as Belcher seems to suggest, that a strike based on the fact that Harris lives in a trailer located in a violent neighborhood is necessarily a pretext for striking him on the basis of his race.

We conclude that Belcher is not entitled to habeas relief based on the overruling of his **Batson** challenge.


## II. Sufficiency of the evidence

Belcher also seeks § 2254 relief based on his allegation that his conviction was not supported by sufficient evidence. These arguments are not substantial.

Belcher contends that the evidence does not support a conviction for solicitation of capital murder. This is supposedly so because there is no evidence that Belcher solicited Myles to murder K.S. and her mother. Rather, Belcher argues, the evidence shows that he solicited Myles to find another person to commit the murder.

The law of Texas supports Belcher's conviction under his view of the evidence. The statute defining criminal solicitation provides:

> A person commits an offense if, with intent that a capital felony or felony of the first degree be committed, he requests, commands, or attempts to induce another to engage in specific conduct that,

-7-

> under the circumstances surrounding his conduct as the actor believes them to be, would constitute the felony or make the other a party to its commission.

TEX. PENAL CODE ANN. § 15.03(a) (Vernon 1994). Belcher concedes that the evidence shows that he solicited Myles to solicit a hit man. "A person commits [murder] if he . . . intentionally or knowingly causes the death of an individual." *Id.* § 19.02(b)(1). If Myles carried out Belcher's mission, he would be intentionally or knowingly causing the death of an individual. This conclusion is supported by the text of the capital murder statute, which defines that offense as a murder in which the perpetrator "employs another to commit the murder for remuneration or the promise of remuneration." *Id.* § 19.03(a)(3). Thus, because Myles would be guilty of capital murder if he carried out Belcher's plot, the evidence showing that Belcher attempted to hire Myles to hire another to commit murders supports a conviction of solicitation of capital murder.

That said, the evidence plainly is sufficient to support Belcher's conviction. Belcher admits that he solicited Myles to arrange the murder of K.S. and her mother, and that the evidence presented at trial established this. The record contains evidence that Belcher solicited Myles to either commit the murders himself or to hire another to do it. Viewing this evidence in the light most favorable to the prosecution, *see Alexander v. McCotter*, 775 F.2d 595, 597 (5th Cir. 1985), the jury could have found beyond a

-8-

reasonable doubt that Belcher committed the essential elements of the crime alleged in the indictment and described in the jury instructions.

Belcher finally contends that under Texas law, Myles's uncorroborated testimony is insufficient evidence to support his conviction. Whether or not that is so, no constitutional violation has occurred in this respect. "[T]he Constitution imposes no requirement that the testimony of an accomplice-witness be corroborated by independent evidence." ***Brown v. Collins***, 937 F.2d 175, 182 n.12 (5th Cir. 1991).

We conclude that Belcher's conviction is supported by sufficient evidence, and the district court properly denied habeas relief on this ground.

## III. Conclusion

The judgment of the district court, denying Belcher habeas corpus relief under 28 U.S.C. § 2254, is AFFIRMED.